IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HECTOR HUGO HERNANDEZ,<br><br>                Plaintiff,<br><br>vs.<br><br>DARLENE LORD, *et al*.,<br><br>                Defendants. | Case No. 3:19-cv-00151-RRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br>**(Dockets 169, 173)** |

## I. INTRODUCTION

Plaintiff, proceeding *pro se*, filed his original Complaint pursuant to 42 U.S.C. § 1983 on May 23, 2019, alleging injuries sustained on April 10, 2019.[1] His First Amended Complaint was filed on June 17, 2020,[2] and on July 7, 2021, Plaintiff moved for leave to file his Second Amended Complaint.[3] The Court allowed the amendment over Defendants' objections.[4] Now before the Court are cross-motions for summary judgment.[5]

## II. BACKGROUND

Plaintiff was in an altercation with another inmate on April 10, 2019. On that occasion, he was administered Motrin (ibuprofen), to which Plaintiff is allergic, and

---

[1] Docket 1.
[2] Docket 62.
[3] Dockets 100, 101. The Second Amended Complaint is found at Docket 101-1.
[4] Docket 125.
[5] Dockets 169, 173.

was then, he claims, placed in a cell located up 17 stairs, and left unattended with a broken ankle to manage his allergic reaction.[6] He later was prescribed Tylenol for pain. On April 12, 2019, a nurse spoke with Plaintiff from outside his cell, and noted that Plaintiff's right ankle was swollen and discolored and instructed him to roll up his blanket to elevate his right foot.[7] On April 14, Plaintiff was transported to medical by wheelchair and was provided a splint, advised to limit motion and not put weight on the ankle, provided extra linen, crutches, and Tylenol, and prescribed a bottom bunk/bottom tier housing assignment.[8] X-rays were scheduled. On April 16, 2019, he returned to medical where a nurse opined that his ankle was either sprained or fractured, but that she could not tell until the swelling went down. She again prescribed Tylenol.[9] A "spiral fracture of the distal fibula" was confirmed by X-ray on April 18, 2019.[10] Plaintiff alleges, and the record supports, that he was not prescribed prescription pain medication (Tylenol 3) until April 19, nine days after fracturing his ankle.[11]

Plaintiff then was moved several times in the next few weeks, sometimes to a bottom bunk and sometimes to a top bunk.[12] He initially was not permitted to have his crutches with him in his cell, but on April 22, 2019, nursing staff reiterated that it was

---

[6] Docket 173 at 3.
[7] Docket 170, Exhibit 1 at 82. The nurse was unable to meet and assess outside of cell due to correctional officer availability. *Id.*
[8] Docket 170-11, Lawrence Affidavit, at 4.
[9] Docket 170, Exhibit 1 at 76.
[10] Docket 173-1 at 81. "Diagnostic Imaging of Alaska only comes to GCCC to provide x-ray imaging services on Fridays." Docket 170-11 at 4. Defendants assert that Plaintiff's ankle was not X-rayed until 8 days after the altercation because the injury sustained on a Thursday was not apparent until Saturday.
[11] Docket 173 at 12.
[12] Docket 173-3 at 3.

*Hernandez v. Lord, et al.*     Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment     Page 2
Case 3:19-cv-00151-RRB   Document 193   Filed 08/09/24   Page 2 of 20

important not to put weight on the fractured leg, and Superintendent Houser allowed crutches to be provided.[13] On April 23, 2019, Plaintiff was seen by an orthopedic physician, Dr. Michael Montano, who reviewed his x-rays and prescribed "weightbearing as tolerated in a walker boot," and further examination in six weeks.[14] Plaintiff has never been returned to see Dr. Montano.[15] He was provided with a "bottom bunk order for 30 days" on April 25, 2019.[16] A July 16, 2019, follow-up x-ray indicated a "healing fracture."[17] Although Plaintiff continued to complain in January 2020 that his ankle had not healed, September 18, 2019, X-ray images revealed a healed distal fibula fracture.[18] In February 2020, a mental health counselor opined that Plaintiff "appeared to be malingering for medications and personal gain."[19]

Plaintiff filed multiple grievances, most, if not all, of which were denied. Plaintiff now proceeds against twelve prison health care workers and correctional officers alleging that his injury was left untreated for "weeks" while he was required to climb the stairs and use a top bunk in his cell. He alleges "extreme and unrelenting pain," and that the lack of prompt treatment resulted in a failure to heal properly, causing ongoing pain and mobility issues, in addition to PTSD from the traumatic experience.[20] He says

---

[13] Docket 170, Exhibit 1 at 68–69.
[14] Docket 170, Exhibit 1 at 74.
[15] Docket 173 at 11.
[16] Docket 170, Exhibit 1 at 55.
[17] Docket 170, Exhibit 1 at 15.
[18] Docket 170, Exhibit 1 (Unnumbered exhibit, Bates # SOA00976).
[19] Docket 170 at 18, citing Exhibit 1 at 108.
[20] Docket 101-1.

*Hernandez v. Lord, et al.* Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment Page 3
Case 3:19-cv-00151-RRB   Document 193   Filed 08/09/24   Page 3 of 20

Defendants were deliberately indifferent to his medical needs in a "willing, premeditated, malicious, and at many times in a sadistic manner[.]"[21]

### III. APPLICABLE LAW

#### A. Standard of Review

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[22] A party asserting that a fact is undisputed must support such an assertion by citing to materials in the record, including depositions, affidavits or declarations, stipulations, admissions, answers to interrogatories, or other materials.[23] An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party,[24] and a dispute is "material" only if it could affect the outcome of the suit under the governing law.[25] When considering the evidence on a motion for summary judgment, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment.[26]

#### B. 42 U.S.C. § 1983 and the Eighth Amendment

Title 42 U.S.C. § 1983 "is not itself a source of substantive rights," but provides "a method for vindicating rights [found] elsewhere,"[27] such as the Eighth

---

[21] Docket 173 at 2.
[22] Fed. R. Civ. P. 56(a).
[23] Fed. R. Civ. P. 56(c)(1).
[24] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).
[25] *Anderson*, 477 U.S. at 248.
[26] *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 1774, 167 L. Ed. 2d 686 (2007).
[27] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

*Hernandez v. Lord, et al.*     Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment     Page 4
Case 3:19-cv-00151-RRB    Document 193    Filed 08/09/24    Page 4 of 20

Amendment. The prohibition of "cruel and unusual punishment" under the Eighth Amendment prohibits excessive physical force against prisoners, requires officials to provide humane conditions of confinement, including "adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]"[28] Although the Constitution does not mandate "comfortable prisons," the United States Supreme Court has clearly stated that it also does not permit "inhumane ones."[29] Accordingly, the Supreme Court has established the standard for claims alleging failure to provide medical treatment to a prisoner as "deliberate indifference to serious medical needs."[30]

Deliberate indifference to serious medical needs presents a cognizable claim where prison officials **deny, delay, or intentionally interfere with medical treatment**.[31] The Ninth Circuit has explained that "deliberate indifference" is a high legal standard. "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."[32] "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."[33] "A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is

---

[28] *Id*.
[29] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citations omitted).
[30] *Ziglar v. Abbasi*, 582 U.S. 120, 148 (2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).
[31] *Estelle*, 429 U.S. at 104–05 (emphasis added).
[32] *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation and internal quotation marks omitted). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Estelle*, 429 U.S. at 107.
[33] *Whitley v. Albers,* 475 U.S. 312, 319 (1986) (quoting *Estelle*, 429 U.S. at 103).

*Hernandez v. Lord, et al.* Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment Page 5
Case 3:19-cv-00151-RRB   Document 193   Filed 08/09/24   Page 5 of 20

appropriate does not amount to deliberate indifference."[34]  **"To show deliberate indifference, the plaintiff must show that the course of treatment . . . was medically unacceptable under the circumstances <u>and</u> that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health."[35]  "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."[36]**

## IV.  DISCUSSION

The defense argues that there is no dispute of material fact that Mr. Hernandez recovered from his distal fibula fracture at the rate expected and did not suffer any adverse effect from consuming Motrin.  Accordingly, they argue that Plaintiff did not suffer a legally cognizable harm to maintain a deliberate medical indifference claim.[37]  But Plaintiff argues that he endured "[nine] days of horrible mental, psychological and physical trauma and pain [until he] finally was prescribed medication that could actually assist with bearing so much pain."[38]  He also alleges ongoing pain and suffering as a result.

---

[34] *Hamby v. Hammond,* 821 F.3d 1085, 1092 (9th Cir. 2016) (emphasis added).
[35] *Id*.
[36] *Estelle*, 429 U.S. at 104–05.
[37] Docket 170.
[38] Docket 173 at 12.  *See generally* Dockets 101-1 and 173.

*Hernandez v. Lord, et al.* Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment Page 6

The Court has reviewed the motions and related papers, as well as over 700 pages of exhibits filed by the parties.[39] Despite being permitted to file an overlength brief of 94 pages, the defense briefing has provided little relevant caselaw to support the specific facts of this case. Instead, counsel has relied almost entirely on the Declaration of Dr. Robert Lawrence, the Chief Medical Officer for the State of Alaska DOC, whom they characterize as a "non-retained expert witness."[40]

However, "[i]n deciding whether there has been deliberate indifference to an inmate's serious medical needs, [courts] need not defer to the judgment of prison doctors or administrators.'"[41] Where a claim "does not depend on technical determinations but instead hinges on the intent of the prison administrators," expert testimony is not necessarily helpful or required.[42] Dr. Lawrence does not address what *was not* done for Mr. Hernandez, which is the crux of his complaint.

### A. Medical Treatment

Defendants argue that there is no dispute of material fact that medical providers **Land, Strommer, Lord, Sullivan, Baca, and Coyle** did not show deliberate medical indifference to Plaintiff's medical needs because there is no dispute of material fact that they "provided him with appropriate care." Defendants rely exclusively on the declarations of Dr. Lawrence and each Defendant.

---

[39] Dockets 169, 170, 173, 174, 184, 187.
[40] Docket 170-11 at 2.
[41] *Snow v. McDaniel,* 681 F.3d 978, 985 (9th Cir. 2012) (quoting *Hunt v. Dental Dep't,* 865 F.2d 198, 200 (9th Cir. 1989)).
[42] *See Salcido v. Zarek,* 237 Fed. Appx. 151, (9th Cir. 2007).

*Hernandez v. Lord, et al.*     Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment     Page 7
Case 3:19-cv-00151-RRB    Document 193    Filed 08/09/24    Page 7 of 20

### (1) Initial treatment of ankle and allergic reaction

Plaintiff alleges that **Christi Land, APRN**,[43] "did nothing professional to assess" his ankle after the incident and that she negligently prescribed pain medication (Motrin/ibuprofen) to which Plaintiff was allergic. He also alleges that Defendant **David Coyle, LPN**,[44] administered Motrin without checking his medical records for allergies.[45] Plaintiff argues that because he was sent to segregation (with a broken ankle) within an hour of being given Motrin, "no one could see him in his agony and no one seemed to care."[46]

After being informed of his allergy, Defendant Land's notes indicate that Plaintiff was "monitored in medical without appreciable side effect."[47] Four hours later, Defendant Coyle again noted "no signs of an allergic reaction," specifically noting no facial oral swelling, no cyanosis, no urticaria/skin redness, clear lungs, and an O2 saturation of 98.[48] Accordingly, Defendants argue that "there is no dispute of material fact that APRN Land provided Mr. Hernandez appropriate medical care," and seek summary judgment as to Claim 1.[49]

Defendants concede that Land improperly prescribed Motrin, and the Court notes that, at best, she overlooked Plaintiff's fractured ankle, neither of which are best

---

[43] Affidavit at Docket 170-16–170-19.
[44] The record does not contain an Affidavit of Defendant Coyle.
[45] Defendants argue that it was Land who administered the Motrin.
[46] Docket 173 at 3 (citing Exhibit 4-8 at 2).
[47] Docket 170, Exhibit 1 at 85.
[48] *Id.*
[49] Docket 170 at 58–61.

*Hernandez v. Lord, et al.* Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment Page 8
Case 3:19-cv-00151-RRB   Document 193   Filed 08/09/24   Page 8 of 20

described as "appropriate medical care."[50] Nevertheless, negligence does not support an Eighth Amendment claim.[51] With respect to Plaintiff's ankle, Plaintiff does not allege that Land was deliberately indifferent to it—only that she "did nothing professional to assess the type of injury."[52] He also specifically alleges that Defendants *negligently* prescribed and administered Motrin.[53]

Where a provider does not believe the use of a medication presents a serious risk of harm, the conduct cannot constitute deliberate indifference.[54] "Without evidence that [the provider] was aware of the potential harm and consciously disregarded it, plaintiff has shown no more than negligence, if that."[55] Here, Defendant Land's Declaration implies that she did not know of Plaintiff's allergy to Motrin until after he had taken it.[56]

Additionally, nothing in the record documents that Plaintiff actually experienced an allergic reaction, or that he has had any long-term effects from the medication. What is documented is a lack of allergic reactions both immediately after the medication, and four hours later. The Court also notes that none of the RFIs submitted by Plaintiff in the following days mentioned an allergic reaction.[57] There simply is no

---

[50] Exhibit 4-3. Moreover, Land apparently did not administer Benadryl, which previously was administered to Plaintiff when medical records show that he was given aspirin (an NSAID like ibuprofen) by mistake.
[51] *Toguchi*, 391 F.3d at 1057. "Mere indifference, medical malpractice, or negligence will not support a claim of deliberate indifference to serious medical needs." *Broughton v. Cutter Lab.,* 622 F.2d 458, 460 (9th Cir. 1980) (per curiam).
[52] Docket 173 at 2.
[53] *Id*.
[54] *Toguchi*, 391 F.3d at 1058.
[55] *Hardy v. 3 Unknown Agents*, 690 F. Supp. 2d 1074, 1099 (C.D. Cal. 2010) (citing *Toguchi,* 391 F.3d at 1058).
[56] Docket 170-16 at 2.
[57] *Id*. at 54, 57, 67, 68, 70, 78, 83, 84.

*Hernandez v. Lord, et al.* Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment Page 9
Case 3:19-cv-00151-RRB   Document 193   Filed 08/09/24   Page 9 of 20

evidence of harm to support Plaintiff's claim against medical personnel of deliberate indifference with respect to an allergic reaction.

**(2)    Lack of pain medication**

Plaintiff submitted several Request for Interview Forms ("RFIs") in the days and weeks following his injuries.  Plaintiff alleges that the Defendants who responded to the RFIs "personally participated" in causing his injuries by, among other things, failing to provide him with pain medication for nine days.[58]

Defendants concede that **Angela Strommer, ANP**,[59] "likely read at least one" of the RFI's from Plaintiff requesting medical care for his ankle.[60] **Carol Baca, RN**,[61] responded to eight of Plaintiff's RFIs regarding his ankle, his crutches, his bed assignment, pain medication, etc.[62] **Darlene Lord, RN**, responded to seven of Plaintiff's RFIs regarding his ankle injury.[63] **Kyle Sullivan, RN**,[64] responded to nine of Plaintiff's RFIs, the first being on April 24, 2019.[65] Defendants suggest that prior to that date, RN Sullivan was unaware of Plaintiff's injury, and his only action, other than to forward the RFIs to the provider, was to extend Plaintiff's already existing bottom bunk prescription.[66]

---

[58]  Docket 101-1 at 2; Docket 173 at 12.
[59]  Affidavit and Exhibits at Dockets 170-12–170-15.  *See* Errata at Docket 189 and Exhibits at Docket 191.
[60]  Docket 170 at 31.
[61]  Affidavit and Exhibits at Dockets 170-34–170-42.
[62]  Docket 170 at 67.
[63]  Docket 170 at 34 (citing Ex. 1 at 24, 34, 41, 46, 65, 67–68, 70, 115).  Defendants note that Plaintiff's allegation that RN Lord provided better medical care to another inmate has no relevance to whether RN Lord was deliberately indifferent to Plaintiff's serious medical needs.
[64]  Affidavit and Exhibits at Dockets 170-25–170-33.
[65]  Docket 170 at 37.
[66]  Docket 170 at 38 (citing Ex. 1 at 80).

*Hernandez v. Lord, et al.*  Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment  Page 10
Case 3:19-cv-00151-RRB    Document 193    Filed 08/09/24    Page 10 of 20

Although the initial failure to diagnose Plaintiff's fracture may have been mere negligence, medical personnel were aware that Plaintiff had sustained some kind of ankle injury within two days, suspected that it was a fracture within four days, and obtained X-rays on the eighth day. It was not until the ninth day that Plaintiff was provided with prescription-strength pain medication, despite the numerous RFIs regarding "unbearable pain," and specifically asking for medication stronger than Tylenol.[67]

"**Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and *substantial pain*.'**"[68] A fractured ankle arguably qualifies under all three categories. Defendants have provided the Court with no information about any prison policies or procedures that require withholding adequate pain medication until a broken bone is confirmed by X-ray. The Court finds genuine issues of material fact remain regarding the issue of withholding pain medication in light of numerous RFIs requesting same.

C. **Correctional Officer Treatment**

Plaintiff alleges that: (1) **Anthony Price, Jeffery Rush, Keith Rogers, and Bryan Lufkin**[69] improperly housed Plaintiff in an upstairs cell, and repeatedly assigned a top bunk, and "dragged" him up the stairs with a fractured ankle; (2) the foregoing, as well

---

[67] *See* Exhibit 1 at 57, 67, 68, 78, 83, 84.
[68] *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (emphasis added).
[69] Declarations at Dockets 170-7; 170-8; 170-43–170-47; 170-9.

*Hernandez v. Lord, et al.*     Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment     Page 11
Case 3:19-cv-00151-RRB    Document 193    Filed 08/09/24    Page 11 of 20

as **Defendant SSgt. Mark Sehl**,[70] repeatedly confiscated Plaintiff's medical equipment (crutches) in violation of policies and procedures applicable to individuals with disabilities; (3) **Defendant Lufkin** forced Plaintiff to walk without crutches or a wheelchair, and to go up and down the stairs with a fractured leg and restraints "several times," while **Defendants Price and Rogers** "sadistically laughed"; (4) **Defendants Lufkin and Price** commented on Plaintiff's "degrading skin color"; (5) **Defendant Rogers** improperly denied the relevant grievances; and (6) **Probation Officer Kerrisa Yarnot**[71] failed to take action to provide basic medical care after seeing the full extent of his injuries "during her [routine] walks through the 'Segregation Unit,'" and instead left him in the top tier cell for 4 days.[72]

Dr. Lawrence opines, in a single sentence, that the correctional officers "did not interfere with Mr. Hernandez's medical treatment or impair his recovery."[73] The defense briefing has not established what qualifies a medical professional to evaluate the behavior of correctional officers in a deliberate indifference claim. Additionally, Dr. Lawrence misstates the criteria for deliberate indifference. As previously stated, "[d]eliberate indifference to serious medical needs presents a cognizable claim where prison officials **deny, delay, or intentionally interfere** with medical treatment," and "**constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment.**"[74] A plaintiff's ultimate recovery does not negate a finding of deliberate indifference.

---

[70] Declaration at Docket 170-10.
[71] Declaration and Exhibits at Dockets 170-20–170-23.
[72] Docket 101-1 at 10.
[73] Docket 170-11 at ¶ 5.
[74] *Estelle*, 429 U.S. at 104-05 (emphasis added).

*Hernandez v. Lord, et al.*     Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment     Page 12
Case 3:19-cv-00151-RRB    Document 193    Filed 08/09/24    Page 12 of 20

### (1) Conforming with DOC policies

Defendants seek dismissal of Counts 6, 8, 9, and 11, arguing that there is no dispute of material fact that Defendants **Yarnot, Lufkin, Sehl, and Rush** acted in accordance with DOC policies that are reasonably related to legitimate governmental interests of correctional facility safety, and such acts cannot, as a matter of law, sustain a deliberate medical indifference claim.[75] However, Defendants fail to identify the relevant policies.

Defendants also note that GCCC policy prohibits inmates in segregation from having crutches in their cells because they can be used as weapons, and argue that actions taken pursuant to a prison security policy, "even if [they] impinge[] on an inmate's constitutional rights, [are] valid if [the security policy] is reasonably related to legitimate penological interests, such as safety and security of staff and prisoner."[76] Again, the defense has not identified the relevant policy.[77]

### (2) Defendant Yarnot

Defendants argue that Yarnot was physically present with Plaintiff on only one occasion—the first hearing.[78] Accordingly, they argue that Yarnot's actions "did not interfere with Mr. Hernandez receiving appropriate medical care and did not impair his

---

[75] Docket 170 at 85–87.

[76] Docket 170 at 85 (citing *Cox v. McDaniel*, 2007 WL 9658379 at *3 (D. Nev. Feb. 5, 2007) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)).

[77] The Declarations of Lufkin, Rogers, Rush, and Sehl all suggest that this was a GCCC policy, or a judgment call on their part. However, Plaintiff has supplied DOC Policy and Procedure 804.01 (effective 4/14/14) which discusses the procedures for handling prisoners in administrative segregation, including regular inspection and monitoring of the unit and the inmates themselves, including any "physical problems." Docket 173, Exhibit 5-3.

[78] Docket 170 at 40; Docket 170-20 (Yarnot Declaration) ¶ 4.

*Hernandez v. Lord, et al.*  Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment  Page 13
Case 3:19-cv-00151-RRB   Document 193   Filed 08/09/24   Page 13 of 20

recovery."[79] But, as Plaintiff alleges that Yarnot actually visited him at his cell "during her [routine] walks through the Segregation Unit,"[80] and that she questioned how he was able to make it up to his cell in his condition, a genuine issue of material fact exists as to whether this visit occurred, and what obligations she had to ensure Plaintiff received medical care.

### (3) Defendant Price

Finally, Defendants argue that there is no dispute of material fact that **Defendant Price** committed *any* individual act relating to Mr. Hernandez.[81] Because State officials are not subject to suit under section 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights, the defense argues that Price cannot be liable under 42 U.S.C. § 1983 at all, because without allegations of personal participation, a claim must be dismissed.[82] But Plaintiff has alleged that Officer Price routinely walked past Plaintiff's cell, and when Plaintiff showed Price his severely bruised and swollen leg/ankle, "all he would do was to laugh at my situation and once more ignore my pleas."[83] Price's one-page Declaration stating that he did not conduct routine security checks, and had no reason to walk past Plaintiff's cell, does not say that he did not, in fact, do so.[84] Price's Declaration creates a genuine issue of material fact as to his role, if any, in

---

[79] Docket 170 at 41.
[80] Docket 101-1 at 10.
[81] Defendant Price denies personally transporting inmates between cells or determining cell assignments, which Defendants argue is supported by Plaintiff's bed history. Docket 170 at 53 (citing Ex. 3 at 3).
[82] *See King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987) (citation omitted).
[83] Docket 101-1 at 21.
[84] Docket 170-7.

*Hernandez v. Lord, et al.*     Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment     Page 14
Case 3:19-cv-00151-RRB    Document 193    Filed 08/09/24    Page 14 of 20

preventing Plaintiff from getting medical attention.

**(4) Bunk assignments**

Despite Plaintiff's claims of being assigned to top bunks repeatedly and for extended periods of time, the Bed History provided at Exhibit 3 indicates Plaintiff was only assigned to top bunks on three occasions between April 10, 2019 (the date of his injury) and August 1, 2019.[85] On the first occasion, April 19, Plaintiff was assigned to a top bunk for approximately thirteen hours before he was moved to a bottom bunk. On the second two occasions, the bed assignment lasted six hours on one occasion, and less than an hour on the other. Plaintiff's allegations regarding being assigned to top bunks in the days immediately after his injury are not supported by the evidence, and do not survive summary judgment.

**D. Medical Experts**

In support of all of the foregoing, Defendants rely on the Declaration of Dr. Lawrence.[86] According to Lawrence, various Defendants did not show deliberate indifference to Plaintiff's medical needs because their actions did not "interfere" with, "hinder," or "impede" his recovery.[87] The defense used similar phrases nineteen times in their brief.[88] But, as explained above, interference with a plaintiff's *recovery* is not the definition of deliberate indifference. The question is whether prison officials **denied,**

---

[85] Docket 170-5 at 3.
[86] Docket 170-11.
[87] Docket 170-11 at 3, 9, 14.
[88] Docket 170 at 41, 45, 47, 50, 51, 58, 59, 69, 70, 71, 72, 74, 77, 78, 85, 87, 90, 91, 93.

*Hernandez v. Lord, et al.*                                               Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment                               Page 15

**delayed, or intentionally interfered** with medical treatment.[89]

According to Dr. Lawrence, the response to each RFI by medical providers was "timely and appropriate," but he does not indicate what qualifies as "timely." The Court notes that when RFIs were answered (often 2–3 days later), the responses sometimes were incomplete. For example, Defendant Baca took two days to respond to an April 14th RFI, but then only responded that Plaintiff was scheduled for an X-ray, and failed to address his complaints of extreme pain.[90] Another provider received an RFI on April 20th complaining of pain and issues with crutches. Two days later, the response addressed the crutches, but not the pain.[91] Dr. Lawrence's opinion that the RFI responses were "timely" and "appropriate" is unpersuasive without more information.

Also troubling to the Court is Dr. Lawrence's statement at paragraph 28 of his Declaration: "Because a distal fibula fracture is a partial weight bearing injury and because putting weight on the injured leg is, in fact, necessary to recovery, the need to walk across the segregation unit or within his cell would not have hindered Mr. Hernandez's recovery."[92] The Court finds this statement, at best, misleading. Dr. Lawrence again misstates the relevant standard by suggesting that Plaintiff's *recovery* was not "hindered." More importantly, he mischaracterizes the treatment of a distal fibula fracture as explained by Dr. Montano, who prescribed "weightbearing as tolerated **in a walker boot**."[93] Plaintiff

---

[89] *Estelle*, 429 U.S. at 104-05 (emphasis added). "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Id*.
[90] Exhibit 1 at 78.
[91] Exhibit 1 at 57.
[92] Docket 170-11 at 9.
[93] Docket 170, Exhibit 1 at 74.

*Hernandez v. Lord, et al.*     Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment     Page 16
Case 3:19-cv-00151-RRB    Document 193    Filed 08/09/24    Page 16 of 20

was not fitted with a walker boot until April 23, 2019. Prior to that date, and according to the record, prison healthcare providers repeatedly told Plaintiff *not* to put weight on his foot, and to keep it elevated.[94] Even after X-rays identified a fractured fibula, prison medical staff noted that Plaintiff was "non-weightbearing on his right leg," and got permission for Plaintiff's use of crutches in his cell.[95] Dr. Lawrence suggests that leaving Plaintiff without treatment, effective pain medication, or crutches somehow was within the standard of care. The Court is skeptical.

E.  Findings

Defendants argue that "[g]iven that the factual allegations set forth in Mr. Hernandez's motion are largely unsupported by any evidence, directly contradicted by the evidence relied upon, and drawn from the same evidence defendants relied on to support their motion for summary judgment, . . . there is no genuine dispute of material fact in this matter."[96] They argue that, at most, Mr. Hernandez can only produce a "mere difference of medical opinion" which, as the Ninth Circuit has held, is insufficient to support a claim for deliberate medical indifference.

The Court disagrees. In the Ninth Circuit, to show an Eighth Amendment violation, a plaintiff must prove the following by a preponderance of the evidence:

> 1.  The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

---

[94] Docket 170-11, at 3–5.
[95] *Id.* at 5.
[96] Docket 174 at 6.

*Hernandez v. Lord, et al.*  
Order re Motions for Summary Judgment  
Case No. 3:19-cv-00151-RRB  
Page 17  
Case 3:19-cv-00151-RRB   Document 193   Filed 08/09/24   Page 17 of 20

> 2. Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> 3. The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious;[97] and
>
> 4. By not taking such measures, the defendant caused the plaintiff's injuries.[98]

Plaintiff claims that he endured "9 days of horrible mental, psychological and physical trauma and pain [until he] finally was prescribed medication that could actually assist with bearing so much pain."[99] Plaintiff further alleges that the lack of prompt treatment, as well as being forced to walk on a broken ankle, resulted in a failure to heal properly, causing ongoing pain and mobility issues.[100] Defendant's response is that Plaintiff cannot show "actual harm" because a September 2019 X-ray showed a healed fracture, and a mental health counselor opined that Plaintiff is malingering for financial gain.[101] But "actual harm" need not last indefinitely. There remain genuine issues of material fact regarding the pain Plaintiff experienced during the nine days without pain medication, the allegations that Plaintiff was forced to walk on a fractured ankle, and regarding whether Plaintiff has long-standing pain and/or mobility issues as a result of his

---

[97] At this step, the defendant's conduct "must be both objectively unreasonable and done with a subjective awareness of the risk of harm. In other words, the defendant must have known facts from which an inference could be drawn that there was a substantial risk of serious harm, and the defendant must have actually drawn that inference." *Id.*
[98] *See* Ninth Circuit Model Criminal Jury Instruction 9.28.
[99] Docket 173 at 12. *See generally* Dockets 101-1, 173.
[100] Docket 101-1.
[101] Docket 170 at 18 (citing Exhibit 1 at 108).

*Hernandez v. Lord, et al.*  Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment  Page 18
Case 3:19-cv-00151-RRB   Document 193   Filed 08/09/24   Page 18 of 20

injuries.

## V. TRIAL SETTING CONFERENCE AND SETTLEMENT CONFERENCE

Upon written request of the parties, the Court will attempt to locate a settlement judge if both parties agree. Otherwise, the matter should be set for trial and a Trial Setting Conference will be scheduled. At that time, the Court will consider appointing a medical expert pursuant to Federal Rule of Evidence 706 to evaluate Mr. Hernandez's medical records, and to report to the Court on the standard of care for distal fibula fractures.

## VI. CONCLUSION

In light of the foregoing, **Defendants' Motion for Summary Judgment at Docket 169 is Granted in Part and Denied in Part**. The following are dismissed with prejudice:

    1. Any claim alleging negligent medical treatment on the day Plaintiff sustained his injury, April 10, 2019, including any allergic reaction, because negligence does not establish "deliberate indifference";

    2. Any claim with respect to top bunk assignments, as these claims are not supported by the record.

The Court finds, without concluding one way or the other, that genuine issues of material fact remain regarding the remaining issues, including whether various Defendants exhibited "deliberate indifference" to Plaintiff's injury, including: ignoring

*Hernandez v. Lord, et al.*  
Order re Motions for Summary Judgment  
Case No. 3:19-cv-00151-RRB  
Page 19  
Case 3:19-cv-00151-RRB   Document 193   Filed 08/09/24   Page 19 of 20

repeated requests for pain medication for nine days; forcing him to walk up stairs in restraints with a broken ankle; and preventing him from access to crutches for twelve days.

Summary Judgment as to the remaining issues, and **Plaintiff's Motion for Summary Judgment at Docket 173, therefore are DENIED**. The parties are instructed to notify the Court on or before **August 30, 2024**, if they are interested in a settlement conference.

IT IS SO ORDERED this 9th day of August, 2024, at Anchorage, Alaska.

*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge

*Hernandez v. Lord, et al.*   Case No. 3:19-cv-00151-RRB
Order re Motions for Summary Judgment   Page 20
Case 3:19-cv-00151-RRB   Document 193   Filed 08/09/24   Page 20 of 20